Thomas P. Riley, SBN 194706
LAW OFFICES OF THOMAS P. RILEY, P.C.
First Library Square
1114 Fremont Street
South Pasadena, CA 91030-3227

Tel:  626-799-9797
Fax: 626-799-9795
TPRLAW@att.net

Attorneys for Plaintiff
J & J Sports Productions, Inc.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC, | Case No. 3:08-cv-00473-WHA |
| Plaintiff, | NOTICE OF APPLICATION AND APPLICATION FOR DEFAULT JUDGMENT BY THE COURT |
| vs. | |
| CESAR MEJIA AGUILAR , et al., | For: Honorable William H. Alsup |
| Defendant. | Date: May 22, 2008 |
| | Time: 8:00 AM |

TO THE HONORABLE WILLIAM H. ALSUP, THE DEFENDANT AND

HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on a date and at a time to be set by this Honorable Court or as soon thereafter as this matter may be heard by the above entitled United States District Court, located at 450 Golden Gate Ave., San Francisco, CA 94102, Plaintiff will present its Application for Default Judgment against Defendant Cesar Mejia Aguilar, individually and d/b/a Club 26 Mix.

The Clerk has previously entered the default of said Defendant on or about April 9, 2008.

At the time and place of hearing, Plaintiff will present proof of the following matters:

NOTICE OF APPLICATION AND APPLICATION
FOR DEFAULT JUDGMENT BY THE COURT
CASE NO. 3:08-CV-00473-WHA
PAGE 1

1.    Defendant is not an infant or incompetent person, or in military service or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940; and,

2.    Defendant has not appeared in this action; and,

3.    Notice of this Application for Default Judgment by the Court and supplemental pleadings were served on said Defendant; and,

4.    Plaintiff is entitled to judgment against Defendant the claims pled in the complaint. To wit:

        A.    By contract, Plaintiff paid for the proprietary rights to distribute the *"The Battle;" Erik Morales v. Manny Pacquiao II WBC International Super Featherweight Championship Fight Program* of January 21, 2006, via closed-circuit television (hereinafter referred to as the "Program").

        B.    With full knowledge that the Program was not to be intercepted, received, and/or exhibited by entities unauthorized to do so, the above named Defendant, and/or his agents, servants, workmen, and/or employees, did unlawfully intercept, receive and thereafter exhibit the Program at the time of the transmission at the address of the establishment, "Club 26 Mix", a food and drink operated by Defendant, and located at 3024 Mission St., San Francisco, California 94110.  Please see the concurrently filed Declaration of Affiant.

        C.    Said unauthorized reception, interception and/or exhibition of the Program by said Defendant was done willfully and for the purpose of direct or indirect commercial advantage or private financial gain.

        D.    The unauthorized publication or use of communications, such as the transmission for which Plaintiff had the distribution rights, is prohibited by Title 47 U.S.C., Section 605, *et seq.*

**NOTICE OF APPLICATION AND APPLICATION**
**FOR DEFAULT JUDGMENT BY THE COURT**
**CASE NO. 3:08-CV-00473-WHA**
**PAGE 2**

E.     The unauthorized reception, interception and exhibition of the Program at the address of the defendant's establishment as described herein, is also prohibited by Title 47 U.S.C. sec. 553, *et seq.*

F.     By said acts of receiving, intercepting and exhibiting the Program at the above-indicated address, Defendant tortuously obtained possession of the Program and wrongly converted same to his own use and benefit.

5.     Plaintiff seeks Judgment in its favor and against the Defendant, in the amount of $101,600.00.  A breakdown of the relief requested under each of the three (3) counts of the Plaintiff's complaint is detailed within the Proposed Order concurrently filed.

6.     By and through this Application, Plaintiff also seeks recovery of its attorneys' fees and relevant costs incurred as provided for pursuant to 47 U.S.C. Section 553, *et seq.* and 47 U.S.C. Section 605, *et seq.*

Respectfully submitted,

Dated:  April 24, 2008

/s/ Thomas P. Riley
**LAW OFFICES OF THOMAS P. RILEY, P.C**.
BY: Thomas P. Riley
Attorneys for Plaintiff
J & J Sports Productions, Inc.

///

///

///

**NOTICE OF APPLICATION AND APPLICATION
FOR DEFAULT JUDGMENT BY THE COURT
CASE NO. 3:08-CV-00473-WHA
PAGE 3**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PROOF OF SERVICE (SERVICE BY MAIL)

I declare that:

I am employed in the County of Los Angeles, California. I am over the age of eighteen years and not a party to the within cause; my business address is First Library Square, 1114 Fremont Street, South Pasadena, California 91030-3227. I am readily familiar with this law firm's practice for collection and processing of correspondence/documents for mail in the ordinary course of business.

On April 24, 2008, I served:

**NOTICE OF APPLICATION AND APPLICATION FOR DEFAULT JUDGMENT BY THE COURT**

On all parties referenced by enclosing a true copy thereof in a sealed envelope with postage prepaid and following ordinary business practices, said envelope was duly mailed and addressed to:

Cesar Mejia Aguilar (Defendant)
3024 Mission Street
San Francisco, CA 94110

I declare under the penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct and that this declaration was executed on April 24, 2008, South Pasadena, California.

Dated: April 24, 2008                    /s/ Terry Houston
                                         **TERRY HOUSTON**

**NOTICE OF APPLICATION AND APPLICATION**
**FOR DEFAULT JUDGMENT BY THE COURT**
**CASE NO. 3:08-CV-00473-WHA**
**PAGE 4**

1  Thomas P. Riley, SBN 194706
   LAW OFFICES OF THOMAS P. RILEY, P.C.
2  First Library Square
   1114 Fremont Avenue
3  South Pasadena, CA 91030-3227

4  Tel: 626-799-9797
   Fax: 626-799-9795
5  TPRLAW@att.net

6  Attorneys for Plaintiff
   J & J Sports Productions, Inc.

7

8                    UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF CALIFORNIA
9

10  J & J SPORTS PRODUCTIONS, INC,          CASE NO. 3:08-cv-00473-WHA

11                  Plaintiff,              MEMORANDUM OF POINTS AND
                                            AUTHORITIES IN SUPPORT OF
12         vs.                              PLAINTIFF'S APPLICATION FOR
                                            DEFAULT JUDGMENT BY THE
13                                          COURT
   CESAR MEJIA AGUILAR, et al.
14

15                  Defendant.

16
   _____

17                        INTRODUCTION

18         Plaintiff, J & J Sports Productions, Inc. (hereinafter "Plaintiff") is an international distributor

19  of sports and entertainment programming.  By contract, Plaintiff purchased the domestic commercial

20  exhibition rights to broadcast the *"The Battle;" Erik Morales v. Manny Pacquiao II, WBC

21  *International Super Featherweight Championship Fight Program* of January 21, 2006.  This

22  *Program* included the main event (between Erik Morales and Manny Pacquiao II) along with under-

23  card (preliminary) bouts, televised replay, and color commentary, hereinafter collectively referred to

24  as the "*Program*".

25  ///

26  ///

27  ///

28

Plaintiff thereafter entered into sublicensing agreements with commercial entities throughout United States and its territories, wherein it granted limited public exhibition rights to these entities (sub-licensees) for the benefit and entertainment of the patrons within their respective establishments (i.e., hotels, racetracks, casinos, taverns, bars, restaurants, social clubs, etc.).

The interstate transmission of the Plaintiff's *Program* was encrypted and made available only to Plaintiff's customers (commercial locations which paid Plaintiff the requisite closed-circuit (commercial) license fees to exhibit the *Program*).

On January 21, 2006 an investigator observed the unlawful exhibition of Plaintiff's *Program* at the Defendant's commercial establishment. The investigator's observations were later documented in a sworn affidavit now before this Honorable Court. (Please see Declaration of Affiant.)

On January 17, 2008, Plaintiff filed suit against Cesar Mejia Aguilar, individually and d/b/a CLUB 26 MIX (hereinafter "Defendant") after Plaintiff's efforts to resolve this matter informally failed. The thrust of Plaintiff's Complaint alleged that the Defendant, and his employees and agents unlawfully intercepted and intentionally exhibited the *Program* at the Defendant's establishment for the purpose of direct or indirect commercial advantage, thereby violating Section 605 of the Federal Communications Act of 1934, as amended, as well as Title 47 U.S.C. § 553. Plaintiff's complaint also includes a pendant common-law claim of Conversion.

Neither the Defendant nor anyone acting on the Defendant's behalf filed an Answer or any other responsive pleading to Plaintiff's duly served complaint. Accordingly, on April 9, 2008 following Plaintiff's Request, the Court entered default against the Defendant in this action.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court now enter judgment against the Defendant as prayed forth below.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S APPLICATION FOR
DEFAULT JUDGMENT BY THE COURT
CASE NO. 3:08-CV-00473-WHA
PAGE 2

## DISCUSSION

**PLAINTIFF IS ENTITLED TO ENHANCED STATUTORY DAMAGES IN THIS ACTION**

Once a default judgment is entered, "it generally is treated as a conclusive and final adjudication of the issues necessary to justify the relief awarded and is given the same effect as between the parties as a judgment rendered after a trial on the merits**.**" ***Wright, Miller & Kane, Federal Practice and Procedures***, §2684, p. 4-19-20. The Defendant's default serves as an admission of Plaintiff's well-pled allegations of fact. ***Danning v. Lavine***, 572 F.2d 1386, 1388 (9th Cir. 1978). Accordingly, the only issue remaining to be decided in this case is the amount of damages, attorneys' fees, and costs to which Plaintiff is entitled from the Defendant for the unauthorized exhibition of Plaintiff's *Program*.

Title 47 U.S.C. Section 605 protects companies such as the Plaintiff against the theft of its proprietary communications such as the instant *Program*. See, ***International Cablevision, Inc. v. Sykes***, 75 F.3d.123 (2d Circ. 1996), ***Cimenelli v. Cablevision***, 583 F. Supp. 158, 161 (E.D.N.Y. 1984); ***Cablevision Systems v. Seimon***, 767 F.2d 1364 (1985); ***Quincy Cablesystems, Inc. v. Sully's Bar, Inc.***, 640 F. Supp. 1159 (D.Mass. 1986); ***National Subscription Television v. S & HTV***, 644 F.2d 820 (9th Cir. 1981); ***National Football League v. Alley, Inc.***, 624 F. Supp. 6 (S.D. Fla. 1983). The majority of the Courts have found that Section 605 applies to cases where the end-user offender obtained a proprietary broadcast by way of a satellite (rather than cable) television programming system.

Title 47 U.S.C. § 553 was designed to provide a remedial scheme for unauthorized reception of cable communication. ***Home Box Office v. Gee-Cee, Inc.***, 838 F.Supp. 436 (E.D. Mo. 1993). Certain courts have also held a private party plaintiff may recover civil damages pursuant to this statute where end-users violators unlawfully obtained a proprietary broadcast via satellite.

As a starting point, a party aggrieved under the Statutes may, at their discretion, recover either actual or statutory damages. **§§ 553(c)(3)(A) and 605(e)(3)(C).** Statutory damages may be awarded up to $10,000.00 for each violation. **§§ 553(c)(3)(A)(ii) and 605(e)(3)(C)(i)(II).** Additionally, if the Court determines the violations were committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain," **the Court may award enhanced damages of up to $100,000.00 for each violation under §605(e)(3)(C)(ii) and $50,000.00 under §553(c)(3)(B)(III).**

Because Plaintiff constitutes an aggrieved party under these telecommunications statutes (hereinafter " Statutes") (see §§553 (C)(1) and 605(D)(6)), Plaintiff is entitled to damages from the Defendant.

CLUB 26 MIX is a commercial establishment, and could only lawfully obtain the *Program* if Plaintiff had contracted with Defendant for the rights to show the *Program*.  However, this lawful approach was not taken.  Therefore, Defendant must have undertaken specific wrongful actions to intercept an/or receive and broadcast the encrypted telecast.  (Please see Plaintiff's Affidavit in Support of Plaintiff's Application for Default Judgment by the Court concurrently filed with this Memorandum (hereinafter "Plaintiff's Affidavit")).  Since the Defendant must have committed wrongful acts in order to intercept, receive, and broadcast the *Program*, Plaintiff seeks substantial statutory damages from the court in this action.

Statutory damages are appropriate where actual damages are difficult to prove.  ***Lauretex Textile Corp. v. Allton Knitting Mills, Inc***., 519 F. Supp. 730, 732 (S.D.N.Y. 1981).  The lack of adequate proof of any particular element causes the Court to rely, within its discretion, on the statutory limitations.  ***F.W. Woolworth Co. v. Contemporary Arts, Inc***., 344 U.S. 228, 233 (1952).  In the instant case, as more fully discussed infra, it would be impossible to calculate the full extent of the profits lost by Plaintiff and the additional damages sustained by Plaintiff as a result of the Defendant's unlawful actions.  Accordingly, it is appropriate for Plaintiff to elect to receive statutory damages in the instant action.

In order to deter the unlawful use of communications such as the *Program*, Congress specifically designed the Statues to provide "both Prosecutor[s] and civil plaintiffs [with] the legal tools they need to bring piracy under control." ***Trademark & Satellite Acts, P.L.-6678, 1988 U.S. Cong. & Admin. News 7***, 5577, 5658; See also ***U.S. v. Scott***, 783 F. Supp. 280, 281 (N.D. Miss. 1992).  To reach these ends, the Statues include severe penalties, both civil and criminal, for those who intercept, receive and/or broadcast protected communications.  See ***Scott***, 783 F. Supp. At 281; See generally §§ 553(b) and 605(e).  Moreover Congress has equated a violation of the Statutes to theft of service.  See **1988 U.S. Code Cong. & Admin.  News 7**, 5577, 4642-43.  In 1988, in an effort ///

///

to further deter theft, Congress amended the Statues to provide for more severe penalties for violations. ***Id.*** at 5657.

As set forth within Plaintiff's Affidavit, the Defendant's interception, receipt, and broadcast of the encrypted *Program* was not inadvertent. Both §§ 553(c)(3)(C) and 605(e)(3)(C)(iii) provides for limited damages to the aggrieved party "[i]n any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section . . . .", as stated by Congress, this type of situation occurs rarely:

> [i]t is not intended that this provision serve in any way as a defense to determination of liability under subsection (a), but rather only as provision to be exercised in the court's discretion for those rare instances of ignorance of the law on the part of one adjudged to have violated it.

***Cable Communications Policy Act***, P.L. 98-549, 5 U.S. Cong. News. '84 Bd. Vol. 8, 4745, 4751.

Instead, when Congress enacted the Statutes, it was specifically cognizant of the severe impact of theft of various wire communications, including closed circuit programming, such as the *Program*.

As stated in the House Bill:

> "The Committee is extremely concerned with a problem which is increasingly plaguing the cable industry-the theft cable service. This problem has taken on many forms from the manufacture and sale of equipment intended to permit reception of cable services without paying for it, to apartment building dwellers "tapping" into cable system wire into building's hallway that issued for providing service to a neighbor's apartment unit, to the sale by building superintendents of cable converters left behind by previous tenants to new tenants. Such practices does not only often permit one to obtain cable services without paying the installation and hookup costs, but also, for instances, involve individuals gaining access to premium movie and sports channels without paying for the receipt of those services.
>
> Theft of services deprives the cable industry of millions of dollars of revenue each year which it should otherwise be receiving. The Committee believes that theft of cable service poses a major threat to the economic viability of cable operators and cable programmers, and creates unfair burdens on cable subscribers who are forced to subsidize the benefits that other individuals are getting by receiving cable service without paying for it".

///

*Cable Communications Policy Act of 1984, House Report No. 98-934, 5 U.S. Cong. News*. '84 Bd. Vol. -6, 4655, 4720.  Moreover, according to Congress, these incidents threaten to undermine the satellite industry and adversely impact legitimate satellite dealers and satellite programmers who otherwise should be receiving payment for their programming or descrambling devices.  See *U.S. v. Scott*, 783 F.Supp. 280, 281 (N.D. Miss. 1992) (quoting 1984 U.S. Code Cong. & Admin. News 4655, 4746).

Therefore, in light of the above observations, as it first basis for relief, Plaintiff requests statutory damages pursuant to §§ 553(c)(3)(A)(ii) and 605(e)(3)(C)(i)(II).  See *Cable/Home Communication Corp. v. Network Production, Inc.*, 902 F.2d 829, 850 (11th Cir. 1990).  Where both statutes have been violated, some Ninth Circuit courts have chosen to award damages pursuant only to § 605(e)(3)(C)(i)(II).  *See Kingvision Pay-Per-View, Ltd. v. Ortega*, 2002 U.S. Dist. LEXIS 24305, *6 (N.D. Cal. 2002).  However, it is not unheard of for courts in this circuit to award damages pursuant to both statutes.  See, *Spencer Promotions Inc. v. 5th Quarter Enterprises Inc.*, 1996 U.S. Dist. LEXIS 8686 (N.D. Cal. 1996).

Under Title 47 U.S.C. Section 605(e)(3)(c)(II), the amount of statutory damages to which Plaintiff is entitled for each violation shall be not less than $1,000.00 and no more than $10,000.00.

To determine appropriate statutory awards, Ninth Circuit courts have considered many factors, and these factors often overlap with the factors for enhancing damages.  See generally *Universal Sports Network, Inc. v. Jimenez*, 2002 U.S. Dist. LEXIS 17709 (N.D. Cal. 2002) (considering intent to realize personal gain, repeat offenses, and the extent of the rebroadcast); *Kingvision Pay-Per-View, Ltd. v. Rivers*, 2000 U.S. Dist. LEXIS 4338 (N.D. Cal. 2000) (considering repeat offenses, and awarding the statutory minimum only where one defendant was already out of business).  Some courts will award the minimum amount automatically if the defendant profited less than $1,000.00 from pirating the fight.  See *Entertainment by J&J, Inc. v. Montecinos*, 2002 U.S. Dist. LEXIS 13633 (N.D. Cal. 2002).  However, this reasoning should only be used if the Plaintiff seeks restitution damages or substitutional relief by invoking Section 605(e)(3)(C)(I) for actual damages.  Other courts will award anywhere from $2,000.00 to $10,000.00 as a starting point.  See *Joe Hand Promotions,*

///

1   *Inc. v. Dailey*, 2003 U.S. Dist. LEXIS 4091 (N.D. Cal. 2003); *Spencer Promotions Inc. v. 5th*

2   *Quarter Enterprises Inc.*, 1996 U.S. Dist. LEXIS 8686 (N.D. Cal. 1996).

3           Yet it is respectfully submitted that *the most* important factor in assessing damages is the

4   deterrent effect of that the award.  See generally *Trademark & Satellite Acts*, **P.L.**-6678, 1988 *U.S.*

5   *Cong. & Admin. News* 7, 5577, 5658.  Many courts factor deterrence into their damage enhancement

6   for Section 605(e)(3)(C)(ii), although it may be more appropriate for the statutory damage calculation

7   pursuant to Section 605(e)(3)(C)(II).  See *Joe Hand Promotions, Inc. v. Pete*, 1999 U.S. Dist. LEXIS

8   12651 (N.D. Cal. 1999) (awarding $5,000.00 to deter future transgressions); *Entertainment by J&J,*

9   *Inc. v. Montecinos*, 2002 U.S. Dist. LEXIS 13633 (N.D. Cal. 2002) (awarding $5,000.00 to deter

10  future transgressions).

11          We would like to draw the Court's attention to one case where the enhanced statutory

12  damages awarded, based solely on the deterrent effect, were more than three times what the

13  transgressor would have paid to properly commercially license the event.  See *Entertainment By*

14  *J&J, Inc. v. Al-Waha Enterprises, Inc.*, 219 F. Supp. 2d 769, 777 (S.D. Tex. 2002).  As noted by the

15  Court, requiring the Defendant "to pay the price it would have been charged to obtain legal

16  authorization to display the Event does nothing to accomplish this objective of the statute." *Id.*

17  Accordingly, it is respectfully submitted an award of the *enhanced* statutory damage *minimum*

18  ($10,000.00) is a necessary baseline amount this Court should consider adopting to effectively deter

19  parties such as the Defendant from stealing proprietary programming.  Next, Plaintiff respectfully and

20  additionally requests enhanced damages pursuant to Sections 553(c)(3)(B) and 605(e)(3)(C)(ii).

21  Section 605(e)(3)(C)(ii) advises awarding up to $100,000.00 where "the violation was committed

22  willfully and for the purposes of direct or indirect commercial advantage or private financial gain . .

23  ."  In similar circumstances, Section 553(c)(3)(B) will award an aggrieved Plaintiff up to $50,000.00.

24  "Willfulness has been defined by the Supreme Court as 'disregard for the governing statute and an

25  indifference for its requirements.'" *Cablevision Sys. N.Y. City Corp. v. Lokshin*, 980 F. Supp. 107,

26  114 (E.D.N.Y. 1997) (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126 (1985)).

27  ///

28  ///

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF PLAINTIFF'S APPLICATION FOR**
**DEFAULT JUDGMENT BY THE COURT**
**CASE NO. 3:08-CV-00473-WHA**
**PAGE 7**

To determine intent for commercial or private gain, 9th Circuit courts often look for evidence of a cover charge, increased price of food/drinks, advertisements, or the number of patrons in attendance.  See *Entertainment By J&J, Inc. v. Perez*, 2000 U.S. Dist. LEXIS 17709 (N.D. Cal. 2002); *Kingvision Pay-Per-View, Ltd. v. Arias*, 2000 U.S. Dist. LEXIS 162 (N.D. Cal. 2000).  However such requirements are largely illogical and inconsistent with the very nature of the infringing activity.  Commercial signal pirates are looking to avoid, not attract, detection for their unlawful acts, and have no financial investment in the programming they are unlawfully exhibiting.

Mindful of this, Courts today are now looking at the act interception and not promotion of the event itself in calculating appropriate damages.  For instance in *Al-Waha*, the plaintiff *did not* provide evidence of a cover charge or advertisements of the subject fight.  219 F. Supp. 2d at 776.  Nevertheless, the Court rightfully awarded enhanced damages to the aggrieved party plaintiff.  *Id*. at 777.  "Based on the limited methods of intercepting closed-circuit broadcasting of pay-per-view events and the low probability that a commercial establishment could intercept such a broadcast merely by chance, however, courts have held conduct such as that of [the Defendant] . . . to be willful and for the purposes of direct or indirect commercial advantage or private financial gain."  *Id.* at 776 (citing *Kingvision Pay-Per-View, Ltd. v. Admiral's Anchor, Inc.* No. 2, 172 F. Supp. 2d 810, 812 (S.D.W.Va. 2001); *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490; *Time Warner Cable v. Taco Rapido Restaurant*, 988 F. Supp. 107, 111.  Enhanced statutory damages should likewise be awarded in the instant action now before this Honorable Court.

## CONCLUSION

The unauthorized interception, receipt and broadcast of the *Program* and other closed-circuit programming threatens the economic viability of the promotions industry.  There are no countervailing social or policy considerations that justify the unauthorized interception of these broadcasts.  See *ON/TV of Chicago v. Julien*, 763 F.2d 839, 843 (7th Cir. 1985); *Subscription Television of Greater Washington v. Kaufman*, 606 F. Supp. 1540, 1544 (D.D.C. 1985).

///

///

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S APPLICATION FOR
DEFAULT JUDGMENT BY THE COURT
CASE NO. 3:08-CV-00473-WHA
PAGE 8

As a result of theft by the Defendant and others, Plaintiff has lost and will continue to lose its legitimate commercial customers which are unwilling and financially unable to compete with those unauthorized locations, such as CLUB 26 MIX, which exhibit sports and other closed-circuit programming in an unlicensed manner.  Because these unauthorized commercial establishments offer programming to their patrons for no fee (or for a fee which is less than the authorized establishments charge), the legitimate commercial establishments cannot attract paying customers to offset their sizeable investments in commercial licensing and event promotion, and as a result, and incur substantial financial loss.  Therefore eliminating the prospect that they will continue purchasing commercial exhibition licenses from the Plaintiff in the future.

Theft of closed circuit broadcasts, such as the *Program*, by unauthorized commercial establishments, such as CLUB 26 MIX, adversely impacts both Plaintiff and its lawful customers. Plaintiff pays substantial fees to the promoters of the events to obtain the exhibition rights to sublicense the broadcast of closed circuit programming to authorized commercial establishments. Plaintiff's *exclusive* source of revenue is the sublicense fees which it charges to authorized commercial establishments for the right to broadcast closed-circuit boxing and entertainment programming such as the *Program*.  The corrosive effect of commercial signal permanently destroys of Plaintiff's lawful customer base. See ***Cox Cable Cleveland Area, Inc. v. King***, 582 F. Supp. 379, 381 (E.D. Ohio 1983).

Further, as a direct and proximate result of piracy, Plaintiff suffers severe damage to its goodwill and professional reputation, and has invariably lost its right and ability to control and receive fees for transmission of the *Program*.  See ***Quincy Cablesystems, Inc.,*** *640 F.Supp.* at 1161. When negotiating sublicense fees, Plaintiff represents to commercial establishments that it exercises supervision over the commercial distribution of its programming.  When an unauthorized commercial establishment intercept, receive, and broadcast closed-circuit programming, such as the *Program*, Plaintiff's reputation and goodwill suffers irreparable damage with its existing and prospective commercial customers from what appears to be a misrepresentation of such capabilities on its own part.  Ultimately, piracy simply devaluates the product being lawfully developed, marketed, licensed, or sold to the detriment and injury of all.

///

Clearly, Plaintiff should receive just and substantial compensation from the Defendant for these losses suffered.  Modest awards of statutory damages cannot meet that test.  Damages

1  calculated focused on the ill-gotten gains derived by the pirate as opposed to the injury inflicted will

2  never meet that test.

3      Rather, the sustenance of Plaintiff's small family business concern depends upon the

4  willingness of commercial establishments to pay the Plaintiff sublicense fees for its programming,

5  and the Courts' willingness to deal fairly but ever most firmly with the rising tide of theft of

6  Plaintiff's intellectual property.

7      While it maybe unconventional to award the Plaintiff the quantum of damages it now prays

8  for from a defendant in a default setting, piracy is nothing less than outright theft and a firm judicial

   hand is required to stop this predatory behavior and compensate the aggrieved accordingly.

9

10                                          Respectfully submitted,

11

12

13

    Dated:  April 24, 2008              _/s/ Thomas P. Riley_____
14                                       **LAW OFFICES OF THOMAS P. RILEY, P.C.**
15                                       By: Thomas P. Riley
                                         Attorneys for Plaintiff
16                                       J & J Sports Productions, Inc.

17  ///

18  ///

19  ///

    ///
20  ///

21  ///

22  ///

    ///
23  ///

24  ///

    ///
25  ///

26

27                      **PROOF OF SERVICE (SERVICE BY MAIL)**

28      I declare that:

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF PLAINTIFF'S APPLICATION FOR**
**DEFAULT JUDGMENT BY THE COURT**
**CASE NO. 3:08-CV-00473-WHA**
**PAGE 10**

I am employed in the County of Los Angeles, California. I am over the age of eighteen years and not a party to the within cause; my business address is First Library Square, 1114 Fremont Avenue, South Pasadena, California 91030. I am readily familiar with this law firm's practice for collection and processing of correspondence/documents for mail in the ordinary course of business.

On April 24, 2008, I served:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT BY THE COURT**

On all parties referenced by enclosing a true copy thereof in a sealed envelope with postage prepaid and following ordinary business practices, said envelope was duly mailed and addressed to:

Cesar Mejia Aguilar  (Defendant)
3024 Mission Street
San Francisco, CA 94110

I declare under the penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct and that this declaration was executed on April 24, 2008, at South Pasadena, California.

Dated: April 24, 2008                                      /s/ *Terry Houston*
                                                          **TERRY HOUSTON**

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF PLAINTIFF'S APPLICATION FOR**
**DEFAULT JUDGMENT BY THE COURT**
**CASE NO. 3:08-CV-00473-WHA**
**PAGE 11**

1  **Thomas P. Riley, SBN 194706**
**LAW OFFICES OF THOMAS P. RILEY, P.C.**
2  **First Library Square**
**1114 Fremont Avenue**
3  **South Pasadena, CA 91030-3227**

4  **Tel: 626-799-9797**
**Fax: 626-799-9795**
5  **TPRLAW@att.net**

6  **Attorneys for Plaintiff**
**J & J Sports Productions, Inc.**
7
                    **UNITED STATES DISTRICT COURT**
8                    **CENTRAL DISTRICT OF CALIFORNIA**

9
10  **J & J Sports Productions, Inc.,**          Case No. 3:08-cv-00473-WHA

11                      **Plaintiff,**           **DECLARATION OF THOMAS P.**
                                                 **RILEY IN SUPPORT OF PLAINTIFF'S**
12                      **vs.**                   **APPLICATION FOR DEFAULT**
                                                 **JUDGMENT BY THE COURT**
13  **Cesar Mejia Aguilar, et al.**              **AGAINST CESAR MEJIA AGUILAR,**
                                                 **INDIVIDUALLY AND D/B/A CLUB 26**
14                      **Defendant.**            **MIX**
15

16

17  To:  The Clerk of the above-entitled Court:

18

19       I, Thomas P. Riley, declare as follows:

20
21       1.      My firm and I are counsel to J & J Sports Productions, Inc., in the above-entitled action.

22
23       2.      The Defendant has not appeared in this action and has not responded to the Complaint
     served upon him within the time permitted by law.
24

25       3.      Defendant is not an infant, incompetent person, or a person in military service or
26  otherwise exempted from default judgment under the Soldiers' and Sailors' Civil Relief Act of 1940.
27  ///
28       4.      On April 8, 2008, a Request for Entry of Default was filed with the Court regarding
     Defendant Cesar Mejia Aguilar, individually and d/b/a Club 26 Mix, the instant Defendant.

**DECLARATION OF THOMAS P. RILEY IN SUPPORT OF**
**PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT**
**BY THE COURT AGAINST DEFENDANT**
**CASE NO. 3:08-CV-00473-WHA**
**PAGE 1**

5.    Default was entered on April 9, 2008, against Defendant Cesar Mejia Aguilar, individually and d/b/a Club 26 Mix.

6.    This action involves a claim for damages by Plaintiff J & J Sports Productions, Inc., against Defendant Cesar Mejia Aguilar, individually and d/b/a Club 26 Mix for misappropriation of a Championship Boxing Program in violation of 47 U.S.C. Section 605, *et seq*., and 47 U.S.C. Section 553, *et seq*.  Plaintiff further alleges that the Defendant committed tort of Conversion.  Plaintiff seeks relief on its causes of action as set forth below.

7.    Plaintiff respectfully requests judgment in its favor and that damages be awarded to it, as follows:

a.  Violation of Title 47 U.S.C. 605 (e)(3)(B)(iii) and (c)(ii):    $    50,000.00

b.  Violation Title 47 U.S.C. 553 (b)(2) and (c)(2)(c):    $    50,000.00

c.  Tort of Conversion:    $    1,600.00

Total Amount of Requested Judgment:    $    101,600.00

I declare under the penalty of perjury of the laws of the State of California and the United States of America that the above is true and correct.

Respectfully submitted,

Dated:  April 24, 2008                          */s/ Thomas P. Riley*
                                                **LAW OFFICES OF THOMAS P. RILEY, P.C.**
                                                BY: Thomas P. Riley
                                                Attorneys for Plaintiff
                                                J & J Sports Productions, Inc.

## PROOF OF SERVICE (SERVICE BY MAIL)

I declare that:

**DECLARATION OF THOMAS P. RILEY IN SUPPORT OF**
**PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT**
**BY THE COURT AGAINST DEFENDANT**
**CASE NO. 3:08-CV-00473-WHA**
**PAGE 2**

I am employed in the County of Los Angeles, California. I am over the age of eighteen years and not a party to the within cause; my business address is First Library Square, 1114 Fremont Avenue, South Pasadena, California 91030. I am readily familiar with this law firm's practice for collection and processing of correspondence/documents for mail in the ordinary course of business.

On April 24, 2008, I served:

**DECLARATION OF THOMAS P. RILEY IN SUPPORT OF PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT BY THE COURT AGAINST CESAR MEJIA AGUILAR, INDIVIDUALLY AND D/B/A CLUB 26 MIX**

On all parties referenced by enclosing a true copy thereof in a sealed envelope with postage prepaid and following ordinary business practices, said envelope was duly mailed and addressed to:

Cesar Mejia Aguilar  (Defendant)
3024 Mission Street
San Francisco, CA 94110

I declare under the penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct and that this declaration was executed on April 24, 2008 at South Pasadena, California.

Dated: April 24, 2008                                    _/s/ Terry Houston_____
                                                                        **TERRY HOUSTON**

**DECLARATION OF THOMAS P. RILEY IN SUPPORT OF**
**PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT**
**BY THE COURT AGAINST DEFENDANT**
**CASE NO. 3:08-CV-00473-WHA**
**PAGE 3**

1   Thomas P. Riley, SBN 194706
    LAW OFFICES OF THOMAS P. RILEY, P.C.
2   First Library Square
    1114 Fremont Avenue
3   South Pasadena, CA 91030-3227

4   Tel: 626-799-9797
    Fax: 626-799-9795
5   TPRLAW@att.net

6   Attorneys for Plaintiff
    J & J Sports Productions, Inc.

7

8                  UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF CALIFORNIA

9

10  J & J SPORTS PRODUCTIONS, INC,               CASE NO. 3:08-cv-00473-WHA

11          Plaintiff,                           DECLARATION OF AFFIANT

12
            vs.
13

14  CESAR MEJIA AGUILAR, et al.

15          Defendant.

16

17      TO THE CLERK OF THE COURT:

18

19      A true and correct copy of the Declaration of Affiant is attached hereto and made part hereof.

20

21

22                                  Respectfully submitted:

23

24
    Date:  April 24, 2008
25                                  /s/ Thomas P. Riley
                                    LAW OFFICES OF THOMAS P. RILEY, P.C.
26                                  By: Thomas P. Riley
                                    Attorneys for Plaintiff
27                                  J & J Sports Productions, Inc.

28


    DECLARATION OF AFFIANT
    CASE NO. 3:08-CV-00473-WHA
    PAGE 1

State of California

County of San Francisco

## **AFFIDAVIT**

I, the undersigned, being duly sworn according to law depose and say that on Saturday, January 21, 2006 at approximately 7:30 p.m., I entered the Club 26 located at 3024 Mission Street, San Francisco, California.

As I entered the establishment, three (3) Hispanic male security guards were standing at the outside entrance checking for identifications of patrons entering the establishment and I observed one (1) black security guard inside the establishment. There was no cover charge to get in. Upon entering Club 26 I walked in a westerly direction into the establishment where approximately three (3) feet inside the door was a dark colored heavy curtain that separated the outside from the inside patron area.

As I entered the main bar area I notice that the Television located on the up on the wall was playing the HPO PPV fights that were scheduled for that evening. I then proceeded to the northern side of the establishment and sat down, where then a Hispanic female approached me and asked me what I wanted.

I ordered an O'Doul's non-alcoholic beverage, and upon the server returning she stated that the drink was $4.00 a piece. I asked the server for a receipt, however she didn't speak english that well and didn't understand the word receipt. There was a Hispanic male at the table to my left that stated that she would get one (1) for me if I wanted one, but never received one.

The Hispanic male individual stated some to the server in Spanish but I was not able to understand what they were saying due to the language barrier. I notice that she was

approximately in her early twenties, approximately 5'10, weighing about 120 lbs., black long hair with a spiral perm in it, wearing a black Latino style blouse with a large ruffle collar and white denim style pants. I was unable to get her name due to the language barrier. The Hispanic male moved about the bar area and I felt that he was in charge of the facility due to him giving orders to the servers and the three (3) bar Hispanic barmaids behind the bar located on the south side of the establishment. He did though speak very good English and understood what I was asking for. He was approximately in his late thirties (30's) to early forties (40's). He was wearing a dark colored shirt and denim style pants with a white sport coat.

The Establishment was split into three (3) different areas, one (1) being the bar area that was located on the south side of the establishment with approximately 20 seats at the bar and approximately eight 8 stools at a very large round elevated table. The area that I was seated in was on the north side of the establishment approximately fifteen (15) feet from the bar with eight (8) tables with four chairs at each of the table. The third area was located on the west side of the establishment, where a pool table was located and patrons watching the fights on a twenty one (21) inch black in color television mounted up on the wall in the south west corner.

There were approximately four (4) televisions on with the fights playing on all four. There was a nineteen-(19) inch television on the east side end of the bar mounted up on the wall by the window that faced Mission Street, black in color. There were two nineteen (19) inch black in color televisions in the area I was sitting, mounted up on the wall that separated the area where I was seated and the rest of the establishment.

There were a total of 3 female bartenders that were serving patrons at the bar area and two (2) servers in the patron area.

When I was seated it was in the first of twelve rounds with two minutes left in the round of the Castillo vs Munoz fight. At that time I observed Munoz in all red trunks and Castillo wearing red trunks with two (2) white stripes down the side, and Munoz knocked Castillo down and there was a standing eight count. I continued to watch the fight with other patrons of the establishment. I watched the remainder of the fight sitting at my table in the same place the entire time.

Throughout the establishment, there was no memorabilia, signs, or posters advertising the fight for that evening. The establishment was an up scale bar and that had two (2) windows facing east onto Mission Street. The capacity of the establishment was approximately 150 people. As I sat watching the fight, I counted the number of patrons three (3) times, the head counts being 50, 59, and 70.

As I left the establishment at approximately 7:45 p.m. I attempted to obtain vehicle license plate numbers on vehicles parked out side that could be tied to the bar, However I was unable to due to the fact that there was no parking lot that could be tied to the establishment and the parking was curbside. In front of the entire establishment was a bus zone, therefore all the patrons either walked there or parked at some distance away.

Date: 2-2-06

Charles E. Rafferty, PI #22025
Rafferty Investigations
(707) 429-8076

ALICE PANELO
Commission # 1377345
Notary Public - California
Solano County
My Comm. Expires Oct 22, 2006

Dated February 2, 2006
State of California
County of Solano
Subscribed and sworn to (or affirmed) before on this 2nd day
of February, 2006, by Charles E. Rafferty, Private Investigator,
personally known to me or proved to me on the basis of
satisfactory evidence to be the person(s) who appear before me.

Alice Panelo

Signature



1
2

## **PROOF OF SERVICE (SERVICE BY MAIL)**

3

I declare that:

4
5
6

    I am employed in the County of Los Angeles, California.  I am over the age of eighteen years

7

and not a party to the within cause; my business address is First Library Square, 1114 Fremont

8

Avenue, South Pasadena, California 91030.  I am readily familiar with this law firm's practice for

9

collection and processing of correspondence/documents for mail in the ordinary course of business.

10
11

    On April 24, 2008, I served:

12

## **DECLARATION OF AFFIANT**

13
14

On all parties referenced by enclosing true copies thereof in a sealed envelope with postage prepaid

15

and following ordinary business practices, said envelope was duly mailed and addressed to:

16
17

    Cesar Mejia Aguilar  (Defendant)
    3024 Mission Street

18

    San Francisco, CA 94110

19
20

    I declare under the penalty of perjury pursuant to the laws of the United States that the

21

foregoing is true and correct and that this declaration was executed on April 24, 2008, at South

22

Pasadena, California.

23
24

Dated: April 24, 2008                        */s/ Terry Houston*

25

                                                **TERRY HOUSTON**

26
27
28

DECLARATION OF AFFIANT
CASE NO. 3:08-CV-00473-WHA
PAGE 2

1  **Thomas P. Riley, SBN 194706**
**LAW OFFICES OF THOMAS P. RILEY, P.C.**
2  **First Library Square**
**1114 Fremont Avenue**
3  **South Pasadena, CA 91030-3227**

4  **Tel:  626-799-9797**
**Fax: 626-799-9795**
5  **TPRLAW@att.net**

6  **Attorneys for Plaintiff**
**J & J Sports Productions, Inc.**

7

8  **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

9

10  **J & J SPORTS PRODUCTIONS, INC.,**            **Case No. 3:08-cv-00473-WHA**

11                **Plaintiff,**                   **ORDER (Proposed)**

12                **vs.**

13

14  **CESAR MEJIA AGUILAR, et al.,**

15                **Defendant.**

16  _____

17        Default having been entered in this action on April 9, 2008 against Cesar Mejia Aguilar, and the

18  application for and declarations in support of default judgment having been filed on or about April 24,

19  2008, and having been served on the Defendant and notice given and no appearance by the Defendant

20  having been made in person or in writing and all other requirements for entry of default judgment

21  pursuant to Federal Rule Civil Procedure 55 having been certified to by Plaintiff's counsel, now

22  therefore,

23  ///

24  ///

25  ///

26  ///

27  ///

28

**ORDER (Proposed)**
**CASE NO. 3:08-CV-00473-WHA**
**PAGE 1**

**IT IS HEREBY ORDERED AND ADJUDGED that JUDGMENT** be entered against Defendant Cesar Mejia Aguilar individually and d/b/a Club 26 Mix and in favor of J & J Sports Productions, Inc., as follows:

|   |   |   |
|---|---|---|
| a. | For the Violation of Title 47 U.S.C. 605 (e)(3)(B)(iii) and (c)(ii): | $  50,000.00 |
| b. | For the Violation of Title 47 U.S.C. 553 (b)(2) and (c)(2)(c): | $  50,000.00 |
| c. | For the Tort of Conversion: | $    1,600.00 |
|   | Total: | $ 101,600.00 |

**Accordingly, JUDGMENT IS ENTERED IN ACCORDANCE WITH THE FOREGOING IN THE SUM OF $101,600.00.**

**IT'S SO ORDERED**:

_____     Dated:_____
**The Honorable William H. Alsup**
**United States District Court**
**Northern District of California**

///
///
///
///
///
///
///

## PROOF OF SERVICE (SERVICE BY MAIL)

**ORDER (Proposed)**
**CASE NO. 3:08-CV-00473-WHA**
**PAGE 2**

I declare that:

I am employed in the County of Los Angeles, California.  I am over the age of eighteen years and not a party to the within cause; my business address is First Library Square, 1114 Fremont Avenue, South Pasadena, California 91030.  I am readily familiar with this law firm's practice for collection and processing of correspondence/documents for mail in the ordinary course of business.

On April 24, 2008, I served:

**ORDER (PROPOSED)**

On all parties referenced by enclosing a true copy thereof in a sealed envelope with postage prepaid and following ordinary business practices, said envelope was duly mailed and addressed to:

Cesar Mejia Aguilar  (Defendant)
3024 Mission Street
San Francisco, CA 94110

I declare under the penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct and that this declaration was executed on April 24, 2008, at South Pasadena, California.

Dated: April 24, 2008                              /s/ *Terry Houston*
                                                   TERRY HOUSTON

ORDER (Proposed)
CASE NO. 3:08-CV-00473-WHA
PAGE 3